his debtor, in pursuing and seeking to subject to the payment of his debt, a fund on which he has a specific lien, and with which the executor or administrator has nothing to do, and need not, therefore, be made a party.

To the remaining question, it is a sufficient answer to say, that although ordinarily, under the *third section* of the act of 1785, *ch.* 72, the defendant is entitled to have a day given him to bring in the money, on a decree for the sale of mortgaged premises; yet, being for his benefit, he may waive it if he pleases, which appears to have been done in this case. The answer confesses the complainant's claim, and consents to a sale for the payment of it, on such terms as to the court should appear equitable; thus untying the hands of the court, and giving a discretion over the question of *time for the payment of the debt*, to which the terms of the consent to a sale could alone effectively apply, and not to the *terms of sale*, over which the appellants had no control, and could give none to the court by any consent or act of theirs—all sales in such cases being required by an express provision of the law to be for cash, except where a *complainant* shall consent to its being on a credit. And although a day for the payment of the sum due on the mortgage is not expressly given in the decree, yet the sale being directed to be on a credit of twelve months, it is equivalent to a day being given to the appellants for the payment of the debt, and is entirely, we think, within the terms of the consent given in the answer to a sale.

DECREE AFFIRMED.

--------

### ROBERTSON *vs.* MILLS.—June 1827.

In an action against one partner, by the payee of a partnership note, to recover the amount thereof, the other partner is a competent witness for the defendant, to prove that the consideration of said note was for the witness's exclusive benefit, given to secure a debt due by him on his own account; and that when he signed the note he informed the plaintiff that he was not authorised to sign the defendant's name to it.

APPEAL from *Saint Mary's* County Court. Action of *assumpsit* on a promissory note drawn by *Rhoads* and *Mills*, in favour of the plaintiff, (now appellant,) on the 24th of May 1821, for $171, payable 78 days after date; and also for money had

and received. The action was brought against *Rhoads* & *Mills*, but *Mills* only was arrested. He pleaded *non assumpsit*, on which issue was joined.

At the trial the plaintiff swore *Josiah Turner*, a competent witness, who deposed that he had received letters and bills from *Willard Rhoads*, and that he had seen said *Rhoads* write, and that the signature to the said promissory note, filed in this cause, was in the handwriting of *Rhoads;* that he had known the defendant and *Rhoads* for several years, and in 1820 they had a compting room in *Baltimore*, and were partners in the mercantile business, and were selling goods together when he last saw them in *Baltimore*, which was just previous to the date of the said note; that he had heard both *Rhoads* and the defendant say they were partners in the mercantile business, both before and after the date of the said promissory note. The plaintiff next swore *Philip Turner*, who stated that at the date of the said promissory note, *Rhoads* and the defendant had a compting house on Light-street wharf, *Baltimore*, in which there were goods, and that he had seen *Rhoads* and the defendant, both before and after the date of the execution of said promissory note, in the compting house aforesaid, engaged in purchasing and selling goods. The defendant then offered to swear as a witness the said *Willard Rhoads*, to prove that the consideration of said promissory note was for the peculiar and exclusive benefit of him *Rhoads*, and that the said note was given to secure a debt due by him on his own account, (and not from the firm of *Rhoads* and *Mills,*) to the plaintiff; and that when he signed the said promissory note he informed the plaintiff that he was not authorised to sign the defendant's name to it. To the admissibility of which last mentioned testimony the plaintiff objected; but the Court, [*Stephen*, Ch. J. and *Key* and *Plater*, A. J.] overruled the objection, and permitted the said *Rhoads* to be sworn, and his testimony aforesaid to go to the jury. The plaintiff excepted; and the verdict and judgment being for the defendant, the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE and MARTIN, J.

*Magruder*, for the Appellant, contended, that *Rhoads* was an incompetent witness to prove the facts for which he was offered and admitted to prove. He cited *Owings & Piet vs Low*, 7 *Harr. & Johns*, 124. 2 *Wheat. Selw. N. P.* 870; and *Goodacre vs Breame, Peake's N. P.* 174.

*C. Dorsey*, for the Appellee, cited *Ridley vs Taylor*, 13 *East*, 182. 1 *Phill. Evid.* 54.

JUDGMENT AFFIRMED.

———■❋■———

## BLACK, *et al. vs.* CORD.—June, 1827.

Chancery will not interfere, as between the parties, to set aside a fair voluntary conveyance; where the equity being equal, the volunteer having the law shall prevail. But it is now a clearly settled rule, that chancery will not decree a specific performance of a mere voluntary covenant or agreement without consideration, to make a conveyance.

So where J executed under his hand and seal an instrument of writing as follows: "This obligation obliges me to give H or his heirs or assigns, the one moiety or half of 50 acres of land called M; and also the one moiety or half of a tract called H B. This instrument of writing to be binding on me, my heirs and assigns, for the true performance of the same;" and there was no evidence of any consideration passing between H and J— It was held to be a mere voluntary covenant or agreement, which did not entitle H to the land itself, nor to a decree for a specific performance, nor to any part of the proceeds of the land which was sold on the application of the creditors of J.

APPEAL from the Court of Chancery.

This cause was argued before BUCHANAN, Ch. J. and EARLE, and MARTIN, J. and is fully stated by the chief judge, who delivered the opinion of the court.

*Magruder*, for the Appellants, contended, 1. That there was no sufficient proof of the execution and delivery of the instrument of writing, whereby *John Cord* obliged himself to give to *Henry Cord*, (the appellee,) the one half of the lands therein mentioned. 2. That if its execution was proved, still the appellee would have no claim to one half of the proceeds arising from the sale of the lands, as it was not such an instrument of writing as would have enabled the appellee to obtain a deed for the land from *John Cord*, or his heirs—It not being